IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

NORENE SHIRING KEYSER,)
)
)  2:18-CV-00226-MJH
Plaintiff,)
)
vs.)
)
STATE FARM FIRE AND CASUALTY)
COMPANY,)

Defendant,

OPINION

Plaintiff, Norene Shiring Keyser ("Keyser"), brings the within action for Breach of Contract (Count I), Breach of Implied Covenant of Good Faith and Fair Dealing (Count II)[1], and Bad Faith Pursuant to 42 Pa.C.S. § 8371 (Count III), arising from Defendant, State Farm Fire and Casualty Company ("State Farm")'s claims handling and coverage determination regarding the partial collapse of an exterior brick veneer of an apartment building.

Pending before this Court is State Farm's Motion for Partial Summary Judgment. (ECF No. 38). Upon consideration of Keyser's Complaint (ECF No. 1); State Farm's Answer and Affirmative Defenses (ECF No. 17); State Farm's Motion for Partial Summary Judgment, Brief in Support, Concise Statement of Material Facts, Appendix, and Exhibits (ECF Nos. 38-42); Keyser's Brief in Opposition (ECF No. 43); State Farm's Reply Brief (ECF No. 44); and for the following reasons, State Farm's Motion for Partial Summary Judgment is granted.

---

[1] Count II of Plaintiff's Complaint was dismissed by Order of Court on May 14, 2018. (ECF No. 16).

I.   Background

State Farm insured Keyser under an Apartment Policy (the "Policy"). (ECF No. 40 at ¶ 1) Keyser's Policy provided insurance coverage for a six-unit apartment building ("subject property"). *Id.* at ¶ 2. On February 24, 2017, the exterior brick veneer of the subject property's west-facing wall partially collapsed while Keyser's maintenance staff attempted remedial repairs. *Id.* at ¶ 3. After Keyser filed a claim on the subject collapse, State Farm engaged an engineer, Jon Nedley, to determine the cause of the Plaintiff's loss, and a contractor, Dave Wahl, to estimate the cost to repair the damage. *Id.* at ¶¶ 13, 16.

Mr. Wahl provided State Farm with a preliminary estimate of $115,000 for the cost of repairs to the west wall of the subject property. *Id.* at ¶ 18. Mr. Wahl advised that the estimate was contingent on the scope of damage determined by Engineer Nedley. *Id.* Mr. Wahl also advised State Farm that the subject collapse did not damage the north, south, and east facing exterior walls. *Id.* at ¶ 19. A mason, retained by Mr. Wahl, believed he could closely match the existing brick when completing repairs. *Id.* In his evaluation, Mr. Nedley concluded that the construction work performed by Keyser's maintenance men caused the west-facing brick veneer to collapse. *Id.* at ¶ 20. Upon review of Mr. Nedley's Engineering Report, State Farm concluded that the damage to the subject property caused by the collapse was covered under Keyser's Policy, which provides coverage for "accidental direct physical loss to Covered Property, caused by collapse of a building or any part of a building…". *Id.* at ¶ 21. After reviewing Mr. Nedley's Engineering Report, Mr. Wahl updated his repair estimate and estimated that it would cost $123,446 to repair the damage caused by the collapse of the west-facing brick veneer. *Id.* at ¶ 22.

State Farm calculated the depreciation for the Keyser's loss, and it determined that her actual cash value benefits of $40,107. *Id.* at ¶ 24. State Farm consulted with Keyer's Public Adjusters to review State Farm's benefit determination with him. *Id.* at ¶ 25. On June 26, 2017, the Public

Adjuster advised State Farm that he believed that Keyser was entitled to additional insurance benefits related to the subject collapse, which included a mason's estimate for the cost for repair and replacement of the brick veneer of all four exterior walls of the subject property. *Id.* at ¶ 26.

Upon review of the new information received from Keyser's Public Adjuster, State Farm determined that coverage was owed to her for (1) fire department charges incurred by the Plaintiff, (2) temporary fencing and equipment used to safeguard the property following the collapse, (3) and personal property situated in the subject property that was damaged when the subject property was vacated. *Id.* at ¶ 28. In light of the supplemental demand, State Farm requested that Engineer Nedley re-inspect the subject property to assess the new information and claim of loss received from Keyser. *Id.* at ¶ 29. Mr. Nedley and Keyser's Public Adjusters re-inspected the subject property on July 10, 2017. *Id.* at ¶ 30-31. Keyser's Public Adjusters identified all damage they believed was present at the subject property, while Mr. Nedley inspected every apartment within the subject property, the property's attic and basement, and the exterior of the structure. *Id.* at ¶ 31. Mr. Nedley provided a supplemental engineering report to State Farm on August 4, 2017, which identified some additional areas of damage caused by the subject collapse. *Id.* at ¶ 32-33. Mr. Nedley concluded that most of the interior damages identified by the Keyser's Public Adjusters (such as hairline cracking to drywall and ceiling board present in the subject property) was not caused by the subject collapse. Mr. Nedley also concluded that the subject property's north, south, and east-facing brick veneer was not damaged by the subject collapse. *Id.* at ¶ 33-34.

Following receipt of Mr. Nedley's report, State Farm requested that Mr. Wahl re-inspect the subject property and estimate the cost to repair the additional damages identified by Mr. Nedley as being caused by the subject collapse. *Id.* at ¶ 35. Following his re-inspections, Mr. Wahl provided State Farm with an estimate of $13,477 to repair the interior damages present at the subject property. *Id.* at ¶ 37. Based on this estimate, $9,273 in actual cash value benefits were tendered to Keyser on October 6, 2017. *Id.* State Farm also retained a certified electrician to assess whether the damage

3

caused by the subject collapse and the requirements of local building code necessitated an upgrade to the subject property's electrical systems. *Id.* at ¶ 38. The electrician inspected the subject property on two occasions and worked with local code enforcement officials and utility company representatives to determine whether upgrades to the subject property's electrical system were required. *Id.* at ¶ 39. It was ultimately determined that code upgrades were required to the subject property's electrical systems, and State Farm remitted benefits in the amount of $7,485 related to the required code upgrades to the Plaintiff's electrical system. *Id.* at ¶ 40. On December 14, 2017, State Farm prepared a Summary of Loss that was made available to Keyser outlining her eligibility for benefits under the subject insurance claim. *Id.* at ¶ 41. State Farm paid $108,747 in covered benefits to Keyser under the subject claim, and she remained eligible for an additional $87,052 in benefits if repairs were made to the subject property. *Id.*

## II.   Standard of Review

Summary judgment may only be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

### III. Discussion

#### A. State Farm's partial summary judgment on the Breach of Contract Claim

In her breach of contract claim, Keyser claims that State Farm owes her coverage under the Policy for the damage sustained to the north, south, and east-facing brick veneer. State Farm argues that Keyser has failed to adduce evidence that subject collapse to the west-facing brick veneer caused damage to the north, south, and east-facing brick veneer. "Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract govern its interpretation." *Am. & Foreign Ins. Co. v. Jerry's Sports Ctr., Inc.*, 606 Pa. 584, 2 A.3d 526, 540 (2010) (citations omitted). "It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract, and (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P. C.*, 635 Pa. 427, 137 A.3d 1247, 1258 (2016) (citations omitted). "The interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." *Minnesota Fire & Cas. Co. v. Greenfield*, 579 Pa. 333, 344, 855 A.2d 854 (2004) (internal citations and quotation marks omitted).

The Policy provides in relevant part as follows:

We insure for accidental direct physical loss to the Covered Property.

(ECF No. 41-1). State Farm contends that Keyser fails to meet her burden in proving that the damage to the north, south, and east-facing brick veneer was caused by the collapse of the west-facing brick veneer. Specifically, State Farm argues that Keyser's expert admits that he could not casually relate the damage to the north, south, and east-facing brick veneer to the collapse of the west-facing brick veneer. (ECF No. 41-16 at pp. 51-52). Without such proof that the collapse of the west-facing veneer, a covered loss, caused damage to the north, south, and east facing brick veneer, Keyser cannot support that the Policy requires coverage for any damage to the north, south, and east-facing brick veneer. Therefore, this aspect of the breach of contract claim fails as State Farm did not breach the Policy.

Keyser also claims that if only the west facing brick veneer is replaced, it will not match or conform to the other sides of the subject property. State Farm contends that the minor deterioration and long-term wear cited by Keyser's expert would not necessitate the demolition and reconstruction of the property's entire brick veneer. Keyser cites *Collins v. Allstate Ins. Co.*, 2009 WL 4729901 (E.D. Pa. Dec. 10, 2009) for the proposition that there is a question for the jury whether she is entitled to be made whole through brick veneers on all four sides of "like kind and quality." In *Collins*,

> The Policy require[d] Allstate in the event of a covered loss, to "repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time" or to reimburse the insured for the repair costs of "equivalent construction for similar use" up to the applicable limit of liability.

*Id.* at *1. Here, the State Farm Policy language provides

> Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind or quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether

6

that property has sustained a partial or total loss or damage. The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

(ECF No. 1-1 at p. 20). State Farm contends that Keyser fails to cite to any Policy provision that would support that she is entitled to matching brick veneer. Further, State Farm argues that Keyser has not met her burden that replacement of the west-facing brick veneer will not be with a material of "like kind or quality." The instant matter is distinguishable from *Collins* in that the insured filed a supporting affidavit from its public adjuster, which stated that no slate tiles of "like kind and quality" or "equivalent construction" were available on the market. 2009 WL 4729901 at *6. No such testimony or evidence has been presented here. The Public Adjuster testified that he would need to defer to an expert on mason work to determine the feasibility of matching brick. (ECF No. 41-7 at p. 67). Further, Keyser fails to identify any masons or contractors who could offer testimony on her behalf that the north, south, and east-facing walls need to be demolished and replaced in order preserve a matching veneer. (ECF No. 44-1). Therefore, Keyser has not met her burden that the replacement of the west-facing veneer cannot be accomplished with material of "like kind or quality." Thus, Keyser's breach of contract claim to have the north, south, and east-facing brick veneer replaced to match the west-facing brick veneer does not present a question for the jury.

Accordingly, State Farm's Motion for Summary Judgment as to Count I is granted. Count I of the Plaintiff's Complaint is dismissed in part. Any contractual claims pursued by the Plaintiff concerning her entitlement to benefits related to the north, south, and east-facing exterior brick veneer are dismissed.

### b. Bad Faith Claim

Keyser asserts that State Farm committed statutory bad faith pursuant to 42 Pa.C.S. § 8371 because State Farm denied coverage as to the north, south, and east brick veneers and denied additional payment for interior damages caused by the collapse of the west wall. Under Pennsylvania's bad faith statute, "[i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured," the court may take various actions, including awarding interest, punitive damages, and costs and attorney's fees to the insured. 42 Pa.C.S. § 8371. To prove a bad faith claim in Pennsylvania, "a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017) (emphasis added); *see also W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 312 (3d Cir. 2003).

As regards State Farm's denial of coverage as to the north, south, and east brick veneer, the Court determined above that Keyser had not met her burden that the Policy should have provided coverage. Accordingly, there is no basis for a bad faith claim based upon an unreasonable denial of coverage.

As regards additional payment of damages, Keyser argues that disagreements between the parties' experts precludes the entry of summary judgment on the bad faith claim. Courts have held that "an insurer's reasonable reliance on an engineering expert's report for a coverage decision does not constitute bad faith." *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F.Supp.2d 656, 673 (W.D.Pa.2012) (citing *El Bor Corp. v. Fireman's Fund Ins. Co.*, 787 F.Supp.2d 341, 349 (E.D.Pa.2011) (insurance company's reliance on engineer's findings as a basis for denial of

coverage provides reasonable grounds to deny benefits)) "Moreover, even if the expert incorrectly assessed the cause of damage, this is not evidence that his conclusions were unreasonable or that Defendant acted unreasonably in relying upon them." *Totty v. Chubb Corp.*, 455 F.Supp.2d 376, 390 (W.D.Pa.2006) (*citing Pirino v. Allstate Ins. Co.*, No. 3:04CV698, 2005 WL 2709014, at *5 (M.D.Pa. Oct. 21, 2005)).

Here, Keyser only identifies conflicts amongst the expert's opinions on causation and damages and not the reasonableness of State Farm expert opinions. The conflict between experts may preclude summary judgment on other claims, but not for bad faith. Based upon the reasonableness standard in the bad faith statute coupled with the high burden of proof of clear and convincing evidence, the Court concludes that a reasonable juror could not find bad faith in Keyser's favor. Therefore, State Farm's Motion for Summary Judgment, as regards Count III of Plaintiff's Complaint, is Granted. Keyser's bad faith claim is dismissed.

## IV. CONCLUSION

Upon review of the foregoing, Keyser had not met her burden that she is entitled to a breach of contract claim for the demolition and full replacement of the north, south, and east brick veneer. Further, Keyser has not met her burden that State Farm acted in bad faith by clear and convincing evidence. Accordingly, State Farm's Motion for Partial Summary Judgment is granted. The claim for damages to the north, south, and east brick veneer in Count I and the bad faith claim in Count III are dismissed. A separate order of court will follow.

BY THE COURT:

*/s/ Marilyn J. Horan*
Marilyn J. Horan
United States District Judge